UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICKY LEE VAUGHN                                                                                           Plaintiff

v.                                                                            Civil Action No. 3:20-CV-P317-RGJ

JAMIE UNDERWOOD                                                                                         Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This is a civil-rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Ricky Lee Vaughn leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. Upon review of the complaint, the Court will dismiss claims but allow others to proceed.

**I. SUMMARY OF COMPLAINT**

Plaintiff is incarcerated at the Larue County Detention Center (LCDC). He sues LCDC Jailer Jamie Underwood in both his official and individual capacities.

Plaintiff first alleges that Defendant Underwood caused him to be incarcerated in a cell with 19 other inmates with no hot water, only one working sink, and only one working toilet. He states that when he and his family members complained about these conditions, Defendant Underwood transferred him to a cell with no phone, "no kiosk for visits," and a bottom sink that created a slippery floor. Plaintiff further states that when he and his cellmates asked for cleaning supplies for their cell, Defendant Underwood ordered them out of the cell and into the hallway for 30 minutes while the inmates' property was "put through a shakedown." Plaintiff also alleges that Defendant Underwood told him that he was going to "move you every 30 minutes to prove a point" and that he did cause Plaintiff to be moved multiple times.

Plaintiff next alleges that when he decided to convert to Judaism and requested a kosher diet, he was initially told he was Christian because that is what he indicated when he was "booked." Plaintiff states that he was then escorted to the library where Defendant Underwood angrily ordered him to sign "a kosher diet paper." Plaintiff states that Defendant Underwood was very intimidating and that Plaintiff was scared so he signed the paper. Plaintiff alleges that Defendant Underwood said that he was "going to take everyone on a Kosher diet, put us all in one cell, and make it where we couldn't order commissary at all."

Plaintiff further alleges that when he filed a grievance indicating that his legal mail had been opened outside his presence, Defendant Underwood ordered that he be moved to another cell. Plaintiff states that he got a "bad vibe" in the new cell and that he sent a message through the kiosk system indicating that he feared for his safety. Plaintiff alleges that Defendant Underwood then placed him in an isolation cell and said "now your on disciplinary."

Plaintiff states that he did not do anything to deserve disciplinary action other than exercise his "right to grievance" and that he is now "in disciplinary isolation for no real reason for an undetermined amount of time."

Plaintiff indicates that, based upon these allegations, he is asserting claims of cruel and unusual punishment, discrimination, and retaliation against Defendant Underwood.

As relief, Plaintiff seeks damages and injunctive relief in the form of Defendant Underwood being "removed from position of authority."

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. *See also McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v.*

*Bock*, 549 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d at 604. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

**A. Cruel and Unusual Punishment**

Plaintiff first seems to claim that his cell conditions, including one cell with only one working toilet and sink for 20 inmates, and a lack of hot water, violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). While the Constitution "does not mandate comfortable prisons," the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Moreover, "overcrowding is not, in itself, a constitutional violation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). To allege extreme deprivation to support a viable prison-overcrowding claim, an inmate must allege that the overcrowding results in "deprivations denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Plaintiff's allegation of having only one working toilet and shower in an overcrowded cell fails to rise to the level of an Eighth Amendment violation because he has not alleged that the cell's facilities were insufficient to meet the inmates' hygiene needs. *See, e.g.*, *Agramonte v. Shartle*, 491 F. App'x at 559-60 (finding that plaintiff's allegations that the number of toilets, showers, wash basins, and showers had not increased with the increased population and that there were lines to use the bathrooms failed to allege an unconstitutional denial of basic needs); *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991) (finding one toilet per 24 inmates was not unconstitutional); *Rouse v. Caruso*, No. 06-cv-10961, 2011 U.S. Dist. LEXIS 25776, at *75-76 (E.D. Mich. 2011) (collecting cases where ratios as high as 28 inmates per shower and 13 inmates per toilet did not establish an Eighth Amendment violation where there was no allegation that hygiene was affected).

Plaintiff has also failed to state a claim with regard to his allegation that certain cells he was incarcerated in lacked hot water. *See, e.g.*, *Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) ("The district court . . . properly dismissed Hopkins's claims relating to the absence of hot water in his cell. Prisoners do not have a constitutional right to hot water under the Eighth Amendment."); *Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 U.S. Dist. LEXIS 164561, at *5 (W.D. Ky. Nov. 19, 2012) (finding that the plaintiff's claim that some cells had no hot water was not a constitutional violation).

For these reasons, the Court will dismiss Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief may be granted.

**B. Discrimination**

Plaintiff claims that Defendant Underwood "discriminated" against him when he angrily reacted to Plaintiff's request for a kosher diet and told Plaintiff that all the inmates who requested a kosher diet would be placed in one cell and would not be allowed "to order commissary at all."

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

The Sixth Circuit has held that allegations of verbal harassment and abusive language, including threats, do not give rise to an equal protection claim. *Jones v. Porter*, No. 99-1326, 2000 U.S. App. LEXIS 8929, at *6 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level.") (citing *Ivey v. Wilson*, 832 F.2d at 955); *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Price v. Lighthart*, No. 1:10-cv-265, 2010 U.S. Dist. LEXIS 41529, at *4-8 (W.D. Mich. Apr. 28, 2010) (finding that an allegation that a prison

6

official used racial slurs, standing alone, does not violate the Fourteenth Amendment's guarantee of equal protection) (citing *Williams v. Kaufman Cty.*, 352 F.3d 994, 1013 & n. 61 (5th Cir. 2003)).

Here, Plaintiff merely alleges that Defendant Underwood became angry and subjected Plaintiff to threats after Plaintiff requested a kosher diet, not that that he actually prevented Plaintiff from receiving a kosher diet or that he otherwise subjected Plaintiff to a denial or deprivation in violation of the Fourteenth Amendment. As a result, the complaint fails to state an equal protection claim.

Thus, the Court will dismiss Plaintiff's Fourteenth Amendment claim against Defendant Underwood for failure to state a claim upon which relief may be granted.

**C. Retaliation**

Plaintiff alleges that Defendant Underwood retaliated against him in multiple ways, including frequently moving him from cell to cell, placing him in a cell with phone and kiosk restrictions, and ultimately placing him in disciplinary segregation. Plaintiff alleges that Defendant Underwood took these actions against him because he exercised his right to file grievances regarding various conditions of confinement and incidents at LCDC. <u>Based upon these allegations, the Court will allow a First Amendment retaliation claim to proceed against Defendant Underwood in his individual capacity</u>. In allowing this claim to proceed, the Court passes no judgment upon its merit or upon the ultimate outcome of this action.

The Court, however, finds that Plaintiff has failed to state a retaliation claim against Defendant Underwood in his official capacity. Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436

7

U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claim is actually against Defendant Underwood's employer, Larue County. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff does not allege that Defendant Underwood retaliated against him pursuant to a policy or custom implemented or endorsed by Larue County. Thus, the Court will dismiss Plaintiff's official-capacity claim against Defendant Underwood for failure to state a claim upon which relief may be granted.

### D. Injunctive Relief

As relief, Plaintiff requests that Defendant Underwood be "removed from position of authority." The Court, however, does not have the authority to grant this type of relief under § 1983. *See, e.g., Theriot v. Woods*, No. 2:09-cv-199, 2010 U.S. Dist. LEXIS 14253, at *10-11 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]"); *Ross v. Reed*, No. 1:13-cv-143, 2013 U.S. Dist. LEXIS 44697, at *5-6 (S.D. Ohio Mar. 5, 2013) ("The Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees."); *Leek v. Thomas*, No. 09-3036-SAC, 2009 U.S. Dist. LEXIS 39406, at *9 (D. Kan. May 8, 2009) ("[P]laintiff's requests for disciplinary action against defendants and for defendants to be fired from their State employment are beyond the authority of this court and therefore are not proper requests for relief in this action.").

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity claims, his individual-capacity claims under the Eighth Amendment for cruel and unusual punishment and under the Fourteenth Amendment for discrimination, and his claim for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a Service and Scheduling Order to govern the development of the First Amendment retaliation claim it has allowed to proceed against Defendant Underwood in his individual capacity.

Date:

cc: Plaintiff, *pro se*
 Defendant
 Larue County Attorney
A961.011