UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICKY LEE VAUGHN     Plaintiff

v.     Civil Action No. 3:20-CV-P317-RGJ

JAMIE UNDERWOOD     Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment filed by Defendant Jamie Underwood. [DE 35]. Plaintiff having filed a response [DE 38], and Defendant having filed a reply [DE 39], this matter is ripe for decision. For the following reasons, Defendant's motion for summary judgment will be granted on the retaliation claim before the Court, and the Court will give Defendant an opportunity to file a renewed motion for summary judgment on Plaintiff's remaining retaliation claims.

**I**.

Plaintiff Ricky Lee Vaughn initiated this 42 U.S.C. § 1983 civil-rights action when he was incarcerated as a convicted prisoner at the Larue County Detention Center (LCDC). Plaintiff filed a complaint signed under penalty of perjury. [DE 1]. The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A and dismissed all of Plaintiff's claims except his First Amendment retaliation claims against Defendant in his individual capacity. [DE 9].

**A.**

In the complaint, Plaintiff contends that Defendant, the LCDC Jailer, retaliated against him in multiple ways, including by frequently moving him from cell to cell, placing him in a cell with phone and kiosk restrictions, and placing him in disciplinary segregation, for exercising his right

to file grievances regarding various conditions of confinement and incidents at LCDC. Plaintiff additionally claims that on April 2, 2020, he and three other inmates whose family members lodged complaints about their conditions of confinement at LCDC with the Kentucky Department of Corrections (KDOC) were moved to a cell with harsher conditions of confinement. Plaintiff also contends that after he requested to be placed on a Kosher diet (which the LCDC records submitted by Defendant show occurred on April 27, 2020), Defendant yelled at him and told him that he was "going to move [him] every 30 minutes just to prove a point." Finally, Plaintiff asserts that after he filed a grievance indicating that his legal mail had been opened outside his presence on April 27, 2020, Defendant ordered that he be moved to another cell on April 28, 2020. Plaintiff then claims that after he complained that he felt unsafe in his new cell, he was moved to an isolation cell and told that he was "on disciplinary" on April 29, 2020.

## B.

In his motion for summary judgment, Defendant argues that that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); because the undisputed evidence shows that Defendant is entitled to judgment as a matter of law as to a retaliation claim; and because Defendant is entitled to qualified immunity.[1]

In support of Defendant's argument that he is entitled to judgment on the merits, he submits his own affidavit and LCDC records. Although Plaintiff does dispute some of what is set forth in Defendant's affidavit in his response, he does not dispute the accuracy of the LCDC records attached to Defendant's motion for summary judgment. The LCDC records show that from June 11, 2019, when Plaintiff was first booked at LCDC, until the date he filed the instant action,

---

[1] Because the Court is concluding herein that Defendant is entitled to summary judgment based upon the merits of Plaintiff's claim, the Court does not address Defendant's arguments regarding exhaustion or qualified immunity.

Plaintiff filed three grievances and seventeen "Requests to Talk." Plaintiff submitted his first grievance on September 16, 2019; this grievance concerned lack of access to hair clippers. [DE 35-9]. Plaintiff submitted his second grievance on September 13, 2019; this grievance referenced the lack of haircuts and a broken toilet [DE 35-10]. Plaintiff submitted his third grievance on December 1, 2019; this grievance pertained to his inability to get an I-Pad charged. [DE 35-15]. The LCDC records reflect that the "Requests to Talk" that Plaintiff filed during this period pertained to a transfer request, timesheets, "SAP" or Substance Abuse Program applications, requests for phone numbers, parole issues, phone cards, AAA batteries, a commissary request, and a missing e-cigarette. [DEs 35-4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, & 21]. The last "Request to Talk" Plaintiff filed before initiating this action was filed on February 19, 2020, and pertained to a time card. [DE 35-22].

Defendant also attaches to his motion a record which shows Plaintiff's cell assignment history at LCDC prior to filing the instant action. [DE 35-23]. The record seems to indicate that Plaintiff was moved to a different cell for "general movement" reasons on April 2, 2020; April 6, 2020; twice on April 27, 2020; April 28, 2020; and April 29, 2020. [*Id.*]. The record seems to additionally reflect that Plaintiff was moved on April 2, 2020, and April 6, 2020, for disciplinary reasons. [*Id.*].

In his response to Defendant's motion, Plaintiff argues that the LCDC records above demonstrate that Defendant did unlawfully retaliate against him for filing multiple grievances and "Requests to Talk" while he was incarcerated at LCDC. In his reply, Defendant reiterates the arguments set forth in his motion.

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for

4

trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

To prevail on a First Amendment retaliation claim, a plaintiff must prove three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). If the plaintiff establishes that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant," who may prevail on summary judgment by showing that "he would have taken the same action in the absence of the protected activity." *Id.* at 399.

Defendant's motion for summary judgment only addresses Plaintiff's claim that he was retaliated against for filing multiple grievances and "Requests to Talk" regarding his conditions of confinement at LCDC. It does not address Plaintiff's claims that he was retaliated against after his family members contacted the KDOC to complain about his conditions of confinement at LCDC or after he filed a request to be placed on a kosher diet. Therefore, the only claim that the Court addresses herein is Plaintiff's claim that he was retaliated against for filing multiple grievances and "Requests to Talk."

In his motion, Defendant does not seem to dispute that the filing of non-frivolous grievances or "Requests to Talk" may constitute protected conduct. The Sixth Circuit has clearly held that "an inmate has an undisputed First Amendment right to file grievances against prison

5

officials on his behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citation omitted); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."); *see also Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). The Sixth Circuit has additionally held that since "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form[,]" *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (citation omitted), informal grievances may be protected conduct as well. For purposes of this Memorandum Opinion and Order, the Court will also assume without deciding that the sixteen "Requests to Talk" that Plaintiff filed at LCDC prior to filing this action also constitute protected conduct.

Defendant's main argument regarding the "protected conduct" prong of the retaliation claim seems to be that the LCDC records show that none of these grievances or requests were filed during the "time period in question." However, this argument actually goes to whether the record shows that any adverse action was motivated by Plaintiff's protected conduct, which the Court addresses below.

The Court next turns to whether the evidence establishes that adverse actions were taken against Plaintiff. Although Defendant argues to the contrary, the Court will assume for purposes of this Memorandum Opinion and Order that the actions about which Plaintiff complains and which are supported by the LCDC records, including being placed in segregation on two occasions with certain restrictions and being "frequently" moved in and out of various cells, constitute adverse actions.

Thus, the Court need only decide whether there is sufficient evidence to establish as a matter of law that these allegedly adverse actions were not motivated by Plaintiff's protected

conduct. In addressing the motivation prong of a retaliation claim in *Hill v. Lappin*, 630 F. 3d. 468 (6th Cir. 2010), the Sixth Circuit held as follows:

> "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation and internal quotation marks omitted). But because of the difficultly in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice. *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010). This circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action. *Thaddeus-X*, 175 F.3d at 399. Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive. *Holzemer*, 621 F.3d at 526 (noting explicitly this court's reluctance to find retaliatory motive based on evidence of temporal proximity alone, but concluding that the evidence before it, if true, created an inference of retaliatory motive where temporal proximity existed along with other supporting evidence).

*Id*. at 575-76.

Here, Plaintiff argues that the sheer number of filings he submitted at LCDC prior to being subjected to adverse actions on April 2, 2020, which included cell transfers and placement in segregation, proves that these adverse actions were retaliatory. Defendant argues that the same evidence shows that Plaintiff's placements in segregation and "frequent" cell movements were not motivated by Plaintiff's filing of grievances. In making this argument, he points to the LCDC records which show that Plaintiff last filed a grievance on December 19, 2019, and that the first adverse actions Plaintiff complains of, including frequent cell movement and placement in segregation, occurred on April 2, 2020.[2] Although not mentioned by Defendant, the Court additionally observes that the last "Request to Talk" Plaintiff filed before these allegedly adverse

---

[2] Defendant also relies upon the affidavit he filed in which he avers that none of the adverse actions complained of by Plaintiff were in retaliation for Plaintiff's filing of grievances and provides other reasons that these actions occurred. The Court, however, finds that it need not consider Defendant's affidavit to reach its determination that the instant motion for summary judgment should be granted.

actions began was on February 19, 2020. Moreover, although Plaintiff stated in his verified complaint that he filed a grievance regarding his legal mail on April 27, 2020, he has produced no such grievance.[3] As stated above, in his response, Plaintiff does not dispute that the dates and actions reflected in the LCDC records attached to Defendant's motion for summary judgment are accurate. Moreover, Plaintiff does not mention a legal mail grievance in either his unsworn response or his supporting affidavit. *See, e.g.*, *Thomas v. Harwood*, 1:17-cv-288-FDW, 2019 U.S. Dist. LEXIS 96037, at *9-10 (W.D.N.C. June 7, 2019) (concluding no reasonable jury would accept allegations in a verified complaint that were contradicted by all other available evidence) (citing *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) ("'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'") (citation omitted); *Moak v. Sacramento Cnty.*, No. 2:15-cv-0640 MCE KJN P, 2017 U.S. Dist. LEXIS 119054, at *38-39) (E.D. Cal. July 28, 2017) (finding no triable issue of material fact where jail's housing records contradicted statement in the plaintiff's verified complaint and the plaintiff "adduced no competent evidence" to the contrary in his unverified response to the motion for summary judgment).

Thus, upon review of the record, the Court concludes that Plaintiff has failed to present direct evidence which shows that Plaintiff's April 2020 cell movements were made in retaliation for Plaintiff's grievances or "Requests to Talk." As to circumstantial evidence, the LCDC records establish that Plaintiff's last grievance/"Request to Talk" was filed on February 19, 2020, and that he was not first subjected to the cell movements discussed herein until April 2, 2020; thus, there

---

[3] The LCDC records attached by Defendant reflects that it was actually a request for a kosher diet that Plaintiff filed on April 27, 2020. [DN 35-24]. As noted above, Plaintiff's claim that Defendant retaliated against him for making this request is not addressed by Defendant in the motion for summary judgment now before the Court.

is no evidence of temporal proximity. The Court additionally observes that Plaintiff has failed to submit any circumstantial evidence showing that he was treated differently than similarly-situated individuals who did file not multiple grievances or "Requests to Talk." For these reasons, the Court concludes that Defendant is entitled to judgment as a matter of law on the claims before the Court.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [DN 35] is **GRANTED**.

However, as stated above, this motion only addressed Plaintiff's retaliation claims based on the filing of grievances and/or "Requests to Talk." It did not address Plaintiff's claim that he was retaliated against after his family members complained about the conditions of his confinement at LCDC to the KDOC or his claim that he was retaliated against after he requested to be placed on a kosher diet.

The Court will provide Defendant an opportunity to file a renewed motion for summary judgment that addresses Plaintiff's remaining retaliation claims.  **IT IS HEREBY ORDERED that such a motion shall be filed within 30 days of entry of this Order**.  Plaintiff shall file a response within **30 days** from service of Defendant's motion.[4]  Defendant may file a reply within **21 days** of service of Plaintiff's response.

Date: September 30, 2022

*[signature]*
Rebecca Grady Jennings, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
A961.011

---

[4] The Court again provides the unrepresented Plaintiff with the following general guidance in responding to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003) (holding that a *pro se* prisoner "is entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule").  The Court instructs Plaintiff that, in order to defeat a motion for summary judgment, he must demonstrate a genuine issue of material fact for trial and must support this assertion by citing to facts that can be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c).  Plaintiff must support his facts with affidavits (his own statement or witness statements, either sworn or signed under penalty of perjury) and/or other documents contradicting the material facts asserted by Defendant. Otherwise, the Court may accept Defendant's facts as true and grant judgment in favor of Defendant without a trial.  The Court has previously sent Plaintiff the full text of Rule 56 (the summary-judgment rule).